BRIAN L. DAVIDOFF (State Bar No. 102654)
bdavidoff@rutterhobbs.com
NEETA MENON (State Bar No. 254736)
nmenon@rutterhobbs.com
RUTTER HOBBS & DAVIDOFF
  INCORPORATED
1901 Avenue of the Stars, Suite 1700
Los Angeles, California 90067
Telephone: (310) 286-1700
Facsimile:   (310) 286-1728

[Proposed] Reorganization Counsel for
Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:11-bk-28380-AA |
| CISCO BROS. CORP., a California corporation, | Chapter 11 |
| Debtor and Debtor-in-Possession. | NOTICE OF MOTION AND EMERGENCY MOTION FOR ORDER: (A) APPROVING STIPULATION AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL, AND (B) PERMITTING DEBTOR TO HONOR PRE-PETITION CUSTOMER DEPOSITS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| | Date:    TBD<br>Time:    TBD<br>Ctrm:    255 E. Temple Street<br>          Los Angeles, CA 90012 |

TABLE OF CONTENTS

Page(s)

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................................5

I. BACKGROUND FACTS ..............................................................................................5

    A. Petition Date and Jurisdiction ...........................................................................5

    B. General Background on Debtor .........................................................................5

        1. Business Operations ...............................................................................5

        2. Revenue History and Ownership Structure ............................................6

        3. Events Leading to Chapter 11 Filing ......................................................7

        4. The Debtor's Immediate Need to Use Cash Collateral ...........................7

        5. The Debtor's Customer Deposit ............................................................10

II. ARGUMENT ...............................................................................................................10

    A. Legal Standard Authorizing Use of Cash Collateral .......................................10

    B. Emergency/Interim Use of Cash Collateral is Necessary and Appropriate ...................................................................................................12

    C. The Budget Is Reasonable and Feasible ..........................................................12

    D. The Debtor Should be Allowed to Honor Customer Deposits ........................13

    E. The Requirement of Bankruptcy Rule 6003 Have Been Satisfied ..................15

    F. Waiver of Bankruptcy Rules 6004(a) and 6004(h) ..........................................15

III. CONCLUSION ............................................................................................................16

i

NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL

8529.001  895649.4

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*,
  829 F.2d 1484 (9th Cir. 1987) .................................................................................. 13

*Dubuque Packing Co. v. Stonitsch (In re Isis Foods. Inc.)*, 37 B.R. 334, 336 n.3 (W.D. Mo.
  1984), *appeal dismissed*, 738 F.2d 445 (8th Cir. 1984) ............................................. 15

*In re Center Wholesale, Inc.*,
  759 F.2d 1440 (9th Cir. 1985) .................................................................................. 12

*In re Ionosphere Clubs, Inc.*,
  101 B.R. 844 (Bankr. S.D.N.Y. 1989) ...................................................................... 14

*In re Ionosphere Clubs, Inc.*,
  98 B.R. 174 (Bankr. S.D.N.Y. 1989) ........................................................................ 13

*In re Kmart Corp.*,
  359 F.3d 866 (7th Cir. 2004) .................................................................................... 14

*In re NVR L.P.*,
  147 B.R. 126 (Bankr. E.D. Va. 1992) ...................................................................... 14

*In re Oak Glen R-Vee*,
  8 B.R. 213 (Bankr. C.D. Cal. 1981) ......................................................................... 11

*In re Payless Cashways, Inc.*,
  268 B.R. 543 (Bankr. W.D. Mo. 2001) .................................................................... 14

*In re Structurelite Plastics Corp.*,
  86 B.R. 922 (Bankr. S.D. Ohio 1988) ...................................................................... 13

*In re Sullivan Ford Sales*,
  2 B.R. 350 (Bank. D. Me. 1980) .............................................................................. 12

*In re Tucson Indus. Partners*,
  129 B.R. 614 (9th Cir. B.A.P. 1991) ........................................................................ 11

*In re UNR Indus.*,
  143 B.R. 506 (Bankr. N.D. Ill. 1992) ....................................................................... 14

*Miltenberger v. Logansport Ry. Co.*,
  106 U.S. 286 (1882) ................................................................................................. 14

*PBGC v. Sharon Steel Corp. (In re Sharon Steel Corp.)*,
  159 B.R. 730 (Bankr. W.D. Pa. 1993) ..................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Statutes**

11 U.S.C. § 105(a) .................................................................................................. 13, 14

11 U.S.C. § 363 ........................................................................................................ 2, 10

11 U.S.C § 363(a) ......................................................................................................... 11

11 U.S.C. § 363(c)(2)(B) .............................................................................................. 11

11 U.S.C. § 363(c) ........................................................................................................ 13

11 U.S.C. § 363(c)(2)(A) ......................................................................................... 3, 11

11 U.S.C. § 363(c)(3) .................................................................................................... 12

11 U.S.C. § 506(c) .......................................................................................................... 9

11 U.S.C. § 544 ............................................................................................................. 10

11 U.S.C. § 545 ............................................................................................................. 10

11 U.S.C. § 547 ............................................................................................................. 10

11 U.S.C. § 548 ............................................................................................................. 10

11 U.S.C. § 549 ...................................................................................................... 10, 15

11 U.S.C. § 549(a)(2)(B) .............................................................................................. 14

11 U.S.C. § 552 ...................................................................................................... 3, 8, 10

28 U.S.C. § s 363(c)(2)(A) and (B) ............................................................................... 8

28 U.S.C. § 363(c)(1) ................................................................................................... 10

28 U.S.C. § 363(c)(2) ................................................................................................... 11

28 U.S.C. § 157 ............................................................................................................... 5

28 U.S.C. § 157(b)(2) .................................................................................................... 5

28 U.S.C. § 1107(a) ....................................................................................................... 5

28 U.S.C. § 1108 ............................................................................................................. 5

28 U.S.C. § 1334 ............................................................................................................. 5

28 U.S.C. § 1408 ............................................................................................................. 5

28 U.S.C. § 1409 ............................................................................................................. 5

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

iii

NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL
8529.001   895649.4

## TABLE OF AUTHORITIES

Page(s)

Rules

Fed. R. Bankr. Proc. 4001(b)(2) .................................................................................... 12

FRBP 4001 ..................................................................................................................... 12

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

iv

NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL
8529.001    895649.4

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE SECURED CREDITORS OF THE DEBTOR, THE TWENTY LARGEST UNSECURED CREDITORS OF THE DEBTOR, OTHER PARTIES IN INTEREST, AND THEIR RESPECTIVE COUNSEL:

**PLEASE TAKE NOTICE** that Cisco Bros. Corp., the debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), hereby moves the Court for the entry of an interim order (the "Interim Order") on an emergency basis pursuant to Local Bankruptcy Rules 2081-1(a) and 9075-1(a): (a) approving that certain "Stipulation Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363" (the "Stipulation") entered into between the Debtor, on the one hand, and secured creditor Bank of America, N.A. (the "Bank") on the other hand, authorizing the use of Cash Collateral, as that term is defined below, on a temporary basis for the duration of time set forth in the Budget, as that term is defined below; and (b) permitting the Debtor, in its discretion, to apply certain pre-petition customer deposits (collectively, the "Customer Deposits") on a post-petition basis to the underlying customers' completed orders. A true and correct copy of the Stipulation is attached hereto as Exhibit "1," and a true and correct copy of the Budget is attached hereto as Exhibit "2". This Motion is based up on these moving papers, the accompanying Memorandum of Points and Authorities, the Declaration of Terry Shope in Support of First Day Motions (the "Shope Declaration"), the Declaration of Francisco Pinedo in Support of First Day Motions (the "Pinedo Declaration"), the records and pleadings in this case, the arguments and representations of counsel, and any oral or documentary evidence presented at or prior to the time of the hearing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9075-1, any response, written or oral, to the moving papers may be presented before or at the time of the hearing on the Motion.

The Debtor has entered into the Stipulation with the Bank, for which it now seeks court approval, pursuant to which the Bank has agreed to allow the Debtor to use cash pursuant to Bankruptcy Code section 363 that is collateral under the underlying security

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

2

NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL
8529.001  895649.4

agreement between the Debtor and the Bank, including its present and future accounts, all money, all cash and cash equivalents, whether or not deposited in any such account, and, pursuant to and subject to section 552(b) of the Bankruptcy Code, any proceeds thereof (the "Cash Collateral"), subject to the restrictions set forth in the Stipulation, attached hereto as Exhibit "1," for the interim period set forth in the Debtor's budget ending May 13, 2011 (the "Budget"), attached hereto as Exhibit "2". Based on the foregoing, and because the Bank has consented to the use of Cash Collateral pursuant to the terms of the Stipulation, the Debtor respectfully submits that the requirements of Bankruptcy Code section 363(c)(2)(A) have been satisfied as to the Bank, the Debtor's only secured creditor with entitlement to the Cash Collateral. The Debtor also seeks from this Court the establishment of a schedule, notice procedure, and response procedure for the hearing on the continued use of Cash Collateral (the "Final Hearing").

Additionally, the Debtor requires immediate authority to use Cash Collateral to satisfy its daily obligations and carry out its business operations. The Budget demonstrates that, if the Debtor is not immediately granted authority to use Cash Collateral on an interim basis pending the Final Hearing, it will be unable to operate its business and its ability to reorganize will be virtually eliminated. This would result in irreparable harm to the Debtor. By contrast, allowing the Debtor to utilize Cash Collateral would not be detrimental to the Bank, as the terms of the proposed use of Cash Collateral set forth in the Stipulation are fair and reasonable, and adequately protect the Bank. The Debtor reserves the right to seek to modify the Budget and to seek authority to use Cash Collateral for periods extending beyond the period covered by the Budget.

By this motion, the Debtor further seeks the authorization to honor, at its own discretion, certain Customer Deposits on a post-petition basis in order to apply such deposits to completed furniture orders, which terms the Bank has agreed to. Any failure to honor these pre-petition obligations would damage the Debtor's longstanding reputation as a reliable wholesaler and retailer of high quality furniture, and would also likely result in the

diversion of both the Debtor's longstanding and prospective customers to competing businesses. Obviously, this would have a significant impact on the Debtor's revenues.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Interim Order: (a) approving the Stipulation; (b) establishing a schedule, notice procedure, and response procedure with respect to the Final Hearing; (c) permitting the Debtor, in its discretion, to apply the Customer Deposits on a post-petition basis to the underlying customers' completed orders; and (d) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED: April 28, 2011

RUTTER HOBBS & DAVIDOFF INCORPORATED

By   *s/s Brian L. Davidoff*
     BRIAN L. DAVIDOFF
     NEETA MENON
     [Proposed] Reorganization Counsel for Debtor and Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.

## BACKGROUND FACTS

### A. Petition Date And Jurisdiction

On April 27, 2011 (the "Petition Date"), the Debtor commenced this chapter 11 case. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is continuing to manage its financial affairs as a debtor-in-possession.

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 363, and 549.

### B. General Background of the Debtor[2]

#### 1. Business Operations

The Debtor, founded in 1990 by Francisco Pinedo, is a manufacturer and retailer of high-end residential furniture with an emphasis on environmental sustainability and local production. From humble beginnings in Mr. Pinedo's garage in South Central Los Angeles, the Debtor has grown to its current stature, selling both manufactured and purchased furniture products through three channels: wholesale, trade, and retail locations. The Debtor has galleries at HD Buttercup in Los Angeles and ABC Carpet & Home in New York and Florida, as well as six retail locations throughout California, mainly in the Los Angeles area. Its furniture has been featured in numerous trade and lifestyle periodicals.

The Debtor is an exemplar of a socially and environmentally responsible company, and serves a substantial and growing market of individuals seeking to merge high-end aesthetics and quality furniture design with a focus on sustainability and local production. In 2007, the Debtor received the Rudy Brunner award for its outstanding contribution to

---

[1] All capitalized terms not defined herein shall have the same meaning ascribed to them as in the preceding Notice of Motion and Motion.

[2] The background facts set forth herein are based on the Shope Declaration and the Pinedo Declaration, both filed concurrently herewith.



architectural and urban development in the inner city. Mr. Pinedo, in conjunction with KCRW and others, is also a founding member of the META (Making Education The Answer) scholarship fund, which has raised in excess of $500,000 for inner city youth in Southern California.

The Debtor is committed to producing "eco-friendly" products, and the entirety of its upholstered furniture is made with hardwoods that are certified by the Forest Stewardship Council ("FSC"), as are many of its tables and cabinets. The Debtor also offers its customers the option of utilizing its Inside Green™ method of furniture construction, which is 100% sustainable and incorporates natural materials such as wool batting, hemp, jute, cotton, and FSC-certified and reclaimed hardwoods.

The Debtor's furniture is manufactured exclusively in South Central Los Angeles, reflecting its commitment to help bolster the local economy and maintain superior quality control of its products. As similarly situated businesses continue to move their manufacturing offshore, the Debtor continues to believe value exists in its retail/manufacturing model and seeks to provide as many local jobs as possible.

2.    **Revenue History and Ownership Structure**

The Debtor's revenues totaled $10,471,000 in 2007, before decreasing to $7,511,000 in 2009 and subsequently returning to $9,739,000 in 2010. Revenues for the 2010 fiscal year can be categorized as follows:

| | | |
|---|---|---|
| Wholesale | $ 4,355,000 | 44.9% |
| Trade | 1,020,000 | 10.5% |
| Retail | 4,364,000 | 44.6% |
| Total | $9,739,000 | 100.0% |

The Debtor's revenues for the first three months of 2011 totaled $2,238,000, which when accounting for the slight seasonality of the furniture business and trade shows, is on pace to approximate 2010 annual revenues. The Debtor's current open orders total $1.6 million.

Mr. Pinedo and his wife, Alba Pinedo, are each 50% shareholders of the Debtor,

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

6

NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL
8529.001  895649.4

which is a California corporation.

3.  **Events Leading to Chapter 11 Filing**

Starting in 2007, the Debtor's financial performance was materially impacted by the continuing deterioration in the overall economy and the resulting decline in the high-end furniture market. The precipitous drop in the Debtor's revenue is illustrated by the fact that in 2006, before the onset of the recession, the Debtor recorded revenue of $18 million. During the throes of the economic collapse, the Debtor's sales had diminished to $7.5 million in 2009. The Debtor was unable to react adequately to this dramatic decrease in sales, although its efforts to transition into the retail market have been ameliorative.

As a result, the Debtor defaulted on that certain Loan Agreement dated as of October 12, 2006 with its primary lender Bank of America, N.A. (the "Bank") (as subsequently modified on May 4, 2009, the "Loan Agreement"), pursuant to which the Bank extended the Debtor a $1 million line of credit. The Loan Agreement is secured by a lien on "Personal Property Collateral," as that term is defined in section 1 of that certain Security Agreement dated October 12, 2006. On March 24, 2011, the Bank filed a Complaint against the Debtor in the Superior Court of the State of California, County of Los Angeles (the "Superior Court") for a money judgment and order of judicial foreclosure of personal property due to the Debtor's default under the Loan Agreement, as well as damages for certain alleged guaranty obligations. On March 29, 2011, the Superior Court entered an ex parte order for writ of possession of certain personal property of the Debtor, including: all finished goods and works in process; all inventory and materials; and all machinery, furniture, and equipment.

The Debtor commenced this chapter 11 case on April 27, 2011. In conjunction with its bankruptcy filing, the Debtor is implementing across-the-board cost reductions and an exhaustive program of management and operational improvements.

4.  **The Debtor's Immediate Need to Use Cash Collateral**

The Debtor requires the immediate use of Cash Collateral to avoid irreparable harm to the Debtor's estate. Without the immediate use of Cash Collateral, the Debtor will not be able to pay items such as payroll and other necessary expenses needed to ensure that the

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

7

NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL
8529.001  895649.4

value of the Debtor's assets are preserved for the benefit of its estate. Consequently, the Debtor seeks Court approval of the Stipulation, which it has entered into with the Bank[3]. The Debtor believes that the terms of the Stipulation are reasonable and appropriate under the circumstances. The terms and conditions of the Stipulation are relatively straightforward, as follows:

<u>Term</u>. Pursuant to the Stipulation, subject to all of the terms and conditions set forth therein, the Debtor may, pursuant to Bankruptcy Code sections 363(c)(2)(A) and (B), use Cash Collateral for the period of time from the date stated in the Stipulation until the occurrence of a Termination Event, as defined therein.

<u>Use of Cash Collateral</u>. Pursuant to the Stipulation, the Debtor is authorized to use Cash Collateral solely for (a) those debt payments, expenses, and/or disbursements that are expressly permitted thereunder and are consistent with the Budget; and (b) permitted variances to the Budget.

<u>Replacement Liens</u>. Pursuant to the Stipulation, during the term of the Budget and as adequate protection for the Bank's interest in the Cash Collateral and the Debtor's use of the same, the Bank is granted: (1) a replacement security interest in and lien upon all of the Collateral (as that term is defined in the Stipulation); (2)

---

[3] Apart from the Bank, the Debtor's other known secured creditors are judgment creditors Adriana Ortiz and McCollister's Transportation, as well as GE Capital Corporation and Intertel Leasing, Inc. (the "Other Secured Creditors"). None of the Other Secured Creditors have an interest in the Cash Collateral pursuant to Bankruptcy Code section 552, as they do not have interests in the "proceeds, products, offspring, or profits of" the property in which they assert a security interest, apart from the interest of GE Capital Corporation in proceeds from the disposition of certain machinery that comprises its underlying collateral. Additionally, the Debtor has not completely analyzed the validity, perfection, avoidability, amount, extent, or priority of the Other Secured Creditors' claims or liens. Solely for the purposes of this Motion, the Debtor <u>assumes</u>, without conceding, that the Other Secured Creditors hold allowable claims not subject to subordination, and validly perfected and unavoidable security interests in certain of the Debtor's assets, apart from the Cash Collateral. The Debtor reserves all rights and defenses with respect to the Other Secured Creditors' claims, liens, and interests, and nothing contained in this Motion is intended or should be construed as an admission by the Debtor as to the nature, extent, amount, validity, perfection, or priority of the claims or liens of the Other Secured Creditors.

various liens and security interests solely to the extent of diminution in value of the Bank's interest in the Collateral as a result of, among other things, the Debtor's sale, lease or use of Cash Collateral and any other Collateral, as described more fully in the Stipulation; (3) senior administrative expense claims against the Debtor, subject to the terms stated in the Stipulation and only to the extent of diminution in value of the Bank's interest in the Collateral as a result of, among other things, the Debtor's sale, lease or use of Cash Collateral and any other Collateral, as described more fully in the Stipulation; and (4) additional adequate protection requirements in the form of the monthly provision of financial information and the maintenance and insurance of the Collateral on commercially reasonable terms.

<u>No Prejudice</u>. Notwithstanding anything contained therein to the contrary, the Stipulation is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Bank to seek additional protection or adequate protection at any time, including prior to a Termination Event (as defined therein), and for the Debtor to oppose any such request, subject to the admissions and factual stipulations contained therein.

Pursuant to Local Bankruptcy Rule 4001-2(b), the Debtor submits that the Stipulation *does* contain a provision that does the following:

(1)    Binds the Debtor with respect to the validity, perfection, or amount of the secured creditor's pre-petition lien or debt or the waiver of claims against the secured creditor, however the Stipulation does provide that the agreement is subject to the rights of the Official Committee; and

(2)    Waives or limits the estate's rights under 11 U.S.C. § 506(c).

Pursuant to Local Bankruptcy Rule 4001-2(b), the Debtor submits that the Stipulation *does not* contain a provision that does the following:

(1)    Grants cross-collateralization protection, other than a replacement lien or other adequate protection, to the prepetition secured creditors;

(2)    Deems pre-petition secured debt to be post-petition debt or that use post-

NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL
8529.001   895649.4

petition loans from a pre-petition secured creditor to pay part or all of that secured creditor's pre-petition debt, other than as provided in 11 U.S.C. § 552(b);

(3)  Primes any secured lien;

(4)  Grants to the pre-petition secured creditor liens on the Debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549; or

(5)  Provides disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the Debtor with respect to a professional fee carve out.

5. **The Debtor's Customer Deposits**

In the ordinary course of business, the Debtor collects deposits from customers as partial payment for wholesale and retail furniture sales. In these instances, the customer typically makes an initial deposit of 50% of the total anticipated cost. The Debtor is in the process of estimating the total amount of Customer Deposits it is in possession of as of the Petition Date, and expects to have a reliable estimate of this amount at or prior to the time of the hearing on this Motion.

Maintaining the satisfaction and goodwill of prospective guests and other customers is imperative to the success of any reorganization by the Debtor. If the Debtor is unable to honor the Customer Deposits, its revenues would be diminished and its operations would be negatively affected.

II.

ARGUMENT

A. **Legal Standard Authorizing Use of Cash Collateral**

A debtor's use of property of the estate is governed by Bankruptcy Code section 363. Section 363(c)(1) generally provides that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee [or debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or hearing, and may use property of the estate in the ordinary course of business without notice or hearing.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

10
NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL
8529.001  895649.4

However, the Bankruptcy Code establishes a special requirement regarding a debtor-in-possession's use of "cash collateral," defined as:

> . . . cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property. . .

11 U.S.C § 363(a). In the instant case, the Bank alleges that it has a lien on all personal property described in section 1 of the Security Agreement, which includes, *inter alia*, "[a]ll accounts, contract rights, chattel paper, instruments, deposit accounts, letter of credit rights, payment intangibles and general intangibles" of the Debtor, as well as "all cash or non-cash proceeds, product, rents and profits of any Collateral." This would constitute "cash collateral" as that term is defined in the Bankruptcy Code.

It is well settled that it is appropriate for a chapter 11 Debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Indus. Partners*, 129 B.R. 614 (9th Cir. B.A.P. 1991). Section 363(c)(2) permits a debtor-in-possession to use, sell or lease "cash collateral" under subsection (c)(1) only if either of two alternative circumstances exists:

> (A)  each entity that has an interest in such cash collateral consents; or
> (B)  the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

For all of the reasons discussed herein, the Debtor has no ability to continue to operate its business and maximize the value of the assets of its estate unless the Debtor has the ability to use Cash Collateral. Accordingly, the Debtor and the Bank have entered into the Stipulation pursuant to which the Bank consents to the Debtor's use of Cash Collateral, with certain limitations set forth in the Stipulation. As a result, subject to the approval of the Stipulation by the Court, the requirements of Bankruptcy Code section 363(c)(2)(A) have been satisfied as to the Bank.

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

11
NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL
8529.001  895649.4

**B.    Emergency/Interim Use of Cash Collateral is Necessary and Appropriate**

In enacting Bankruptcy Code section 363(c)(3), Congress recognized that preliminary hearings on cash collateral would frequently be held on an emergency basis by stating therein that such hearing ". . . shall be scheduled in accordance with the needs of the debtor." 11 U.S.C. § 363(c)(3). The courts have also recognized that emergency relief on the use of cash collateral is necessary after a case is filed.

> We realize that in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld and that reorganization under the Bankruptcy Code is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations. . . . It is for this very reason that Congress specified that hearings concerning the use of cash collateral shall be schedule in accordance with the needs of the debtor.

*In re Center Wholesale, Inc.*, 759 F.2d 1440, 1444 (9th Cir. 1985) (citations and quotations omitted); *see also In re Sullivan Ford Sales*, 2 B.R. 350, 255 (Bank. D. Me. 1980). FRBP 4001 provides that a court may conduct a preliminary hearing on a motion for authorization to use cash collateral earlier than 14 days after service of the underlying motion, and may authorize use of "that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. Proc. 4001(b)(2). Local Bankruptcy Rule 2081-1(a)(9) also specifically provides for the expedited consideration of a motion for the emergency use of cash collateral.

The interim relief requested in this Motion is not only appropriate and fully warranted, but it is necessary and essential to avoid immediate and irreparable harm to the Debtor, its estate, and its creditors. The Debtor needs cash immediately to operate, and in particular, it has a critical need for cash to meet payroll and manufacturing obligations. The authorization to use Cash Collateral pending a Final Hearing will preserve the value of the Business only if authorization is granted immediately and on short notice.

**C.    The Budget Is Reasonable and Feasible**

The Budget projects the Debtor's cash needs over the next three (3) weeks. This projection was developed by the Debtor's management and financial advisor based upon

current operating data and the best estimate of future cash needs. All of the expense items in the Budget are the actual and necessary costs of operating the business that will enable the Debtor to continue to manufacture and sell sufficient quantities of high-quality furniture and interior design products that its customers demand and expect. The Debtor's management is confident that it will both generate the projected revenue and keep expenses within the parameters set forth in the Budget.

D.    The Debtor Should be Allowed to Honor Customer Deposits

Bankruptcy Code section 105(a) provides in relevant part: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As stated above, Bankruptcy Code section 363(c) authorizes a debtor to expend funds in the ordinary course of business where, in the debtor's business judgment, the expenditure is in the best interests of the estate. 11 U.S.C. § 363(c). Courts routinely rely upon Bankruptcy Code sections 105(a) and 363(c) for statutory authority to honor pre-petition claims on a post-petition basis. *See, e.g., Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (courts have permitted payment of pre-petition claims when necessary for rehabilitation); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) (finding payment of pre-petition claims justified where otherwise debtor's rehabilitative effort immediately would be aborted).

Where the failure to honor existing obligations to pre-petition creditors, such as the customers who placed pre-petition deposits for the Debtor's products, threatens a debtor's prospects for reorganization, the Court may authorize payment of such pre-petition claims at the outset of a bankruptcy case, to promote the best interests of the estate and all of its creditors. As explained by the Bankruptcy Court for the Western District of Missouri:

> Prior to enactment of the Code . . . courts recognized that in certain circumstances it was in the best interest of all concerned to pay certain pre-petition creditors out of turn, as an inducement to them to continue working for, or doing business with, the debtor. Prior to enactment of the Code, this practice was justified under what was known as the "doctrine of necessity", the idea being that payment of those claims was necessary to keep the debtor in business, and that keeping the

>     debtor in business, and its employees at wage-paying jobs, was
>     in the best interest of all concerned. Since enactment of the
>     Code, various courts have permitted debtors-in-possession to pay
>     pre-petition debts on the grounds that payment of such claims
>     was necessary to effectuate a successful reorganization, or at
>     least to give the debtor the opportunity to propose any type of
>     plan at all.

*In re Payless Cashways, Inc.*, 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001) (authorizing debtor to pay pre-petition supplier claims in order to obtain post-petition credit from them).

Using their equitable powers, bankruptcy courts have repeatedly permitted post-petition payment of pre-petition obligations when those payments are necessary to preserve the going concern value of a debtor's business. *See, e.g., Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 312 (1882) (authorizing payment of pre-receivership claim prior to reorganization to prevent "stoppage of . . . [indispensable] business relations"); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 855 (Bankr. S.D.N.Y. 1989) (payment of pre-petition claim is appropriate if it "confers a benefit on the estate and not merely on the payee"). *See also, PBGC v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 159 B.R. 730 (Bankr. W.D. Pa. 1993); *In re NVR L.P.*, 147 B.R. 126 (Bankr. E.D. Va. 1992); *In re UNR Indus.*, 143 B.R. 506 (Bankr. N.D. Ill. 1992).[4]

Furthermore, Bankruptcy Code section 549(a)(2)(B), which governs most post-petition transfers, provides in part that "the trustee may avoid a transfer of property of the estate (1) made after the commencement of the case and, . . . *that is not authorized under this title or by the court.*" 11 U.S.C. § 549(a)(2)(B) (emphasis added). It follows that the Court *may* authorize certain post-petition payments to satisfy pre-petition debts, including honoring deposits. The statute grants the Court, faced with the intricate facts and circumstances of each case, the discretion to ascertain whether a debtor's business judgment to make a post-petition transfer inures to the benefit of the estate in the particular case, and, if so, to authorize the transfer. *See Dubuque Packing Co. v. Stonitsch (In re Isis Foods. Inc.)*,

---

[4] The Debtor is aware of the landmark case *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004), in which the Court of Appeals of the Seventh Circuit declined to apply this "doctrine of necessity" under section 105(a) to the payment of pre-petition claims of certain "critical vendors." However, the facts in the instant case are completely distinguishable, as the Debtor is not seeking to pay any of its vendors by this Motion, and merely wishes to apply (not refund) the Customer Deposits to completed orders placed by its customers.

Case 2:11-bk-28380-EC    Doc 2    Filed 04/28/11    Entered 04/28/11 15:50:21    Desc
Main Document    Page 19 of 20

37 B.R. 334, 336 n.3 (W.D. Mo. 1984), *appeal dismissed*, 738 F.2d 445 (8th Cir. 1984) ("It would appear proposed transfers could be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack under section 549 . . .").

The Court should determine that honoring the Customer Deposits is in the Debtor's best interest, regardless of whether they arose before or after the Petition Date. At a time when customer loyalty and patronage is critical to the Debtor's reorganization efforts, the Debtor submits that it is entirely necessary and appropriate for the Court to issue an order pursuant to Bankruptcy Code sections 105(a), 363(c), and 549 in these circumstances. Moreover, the Customer Deposits are not obligations that the Debtor will liquidate and pay. Rather, they are deposits for furniture orders that the Debtor will apply and honor. In doing so, the Debtor will facilitate the payment of the balance of the purchase price owed by the customer upon delivery of the furniture, and thus enhance its cash flow.

Significantly, the Bank is agreeable to the application of the Customer Deposits in this fashion.

E. <u>The Requirements of Bankruptcy Rule 6003 Have Been Satisfied</u>

Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." The Debtor submits that, for the multitude of reasons discussed above, the relief requested in this Motion is necessary to avoid immediate and irreparable harm. As stated above, it is imperative that the Debtor continue to honor Customer Deposits in the ordinary course of business with respect to their application against completed orders. Accordingly, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003.

F. <u>Waiver of Bankruptcy Rules 6004(a) and 6004(h)</u>

To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirement under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of a property under Bankruptcy Rule 6004(h).

RUTTER
HOBBS &
DAVIDOFF
INCORPORATED
LAWYERS

15
NOTICE OF MOTION AND EMERGENCY MOTION AUTHORIZING USE OF CASH COLLATERAL
8529.001  895649.4

## III.

## CONCLUSION

Based on the foregoing, the Debtor respectfully requests an order of the Court: (a) approving the Stipulation; (b) establishing a schedule, notice procedure, and response procedure with respect to the Final Hearing; (c) permitting the Debtor, in its discretion, to apply the Customer Deposits on a post-petition basis to the underlying customers' completed orders; and (d) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

DATED: April 28, 2011

RUTTER HOBBS & DAVIDOFF
INCORPORATED


By   /s/ Brian L. Davidoff
BRIAN L. DAVIDOFF
NEETA MENON
[Proposed] Reorganization Counsel for
Debtor and Debtor-in-Possession